UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICIA BELIN,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CHARLES O'NEILL,<br><br>　　　　　Defendant. | Civil Action No.<br>3:17-cv-13207 (PGS) (LHG)<br><br>**MEMORANDUM<br>AND ORDER** |

**SHERIDAN, U.S.D.J.**

　　　　This matter comes before the Court on two motions to dismiss Plaintiff's Second Amended Complaint. This case emanates from the death of Jaquan Williams in the intensive care unit of a hospital after a physical altercation with another inmate in his jail cell. Plaintiff, Patricia Belin, is the administratrix of Williams' estate. The motions to dismiss are brought by the County of Somerset (ECF No. 38) and the five supervising Defendants: Warden Charles O'Neill, Deputy Warden Roger Delin, The Estate of Chief Gary Hoats, Captain John Quinn and Sheriff Frank J. Provenzano. (ECF No. 37).

　　　　The Second Amended Complaint (SAC) sets forth seven separate causes of action. They are: (1) failure to protect (Count I); (2) failure to provide medical care (Count II); (3) failure to train/supervisory liability (Counts III, VIII, IX); (4) wrongful death (Counts IV, X); (5) conspiracy to interfere with civil rights (Count V); (6) violations of civil rights under the New Jersey Constitution (Counts VI, XI); and (7) negligence (Counts VII, XII). (ECF No.. 32). The Court has subject matter jurisdiction. 28 U.S.C. § 1331.

I.

On January 11, 2017, the incident giving rise to this case occurred. Williams was having difficulty breathing and a "Code White" issued. (Id. at ¶ 43). Approximately ten minutes later, the Somerville Rescue Squad and the Mobile Intensive Care Unit arrived. (Id. at ¶ 45-46). Williams was transported to Robert Wood Johnson University Hospital, where he went into cardiac arrest. Williams was pronounced dead at 9:45 p.m. (Id. at ¶ 47-51).

Plaintiff alleges that Williams' death was caused by an altercation between Williams and another inmate, James Kyser. The SAC alleges that two unidentified inmates observed the incident. One witness "observed Kyser throwing [Williams] around in his cell, and could hear the thud . . . of Williams' body hitting metal inside the cell." (Id. at ¶ 77). The SAC alleges the fight lasted about twenty minutes. (Id. at ¶¶ 74, 75). The official incident report indicated that the two inmates who witnessed the altercation stated that Williams initiated the fight. (Id. at ¶ 55).

After the altercation ended, two inmates pushed an intercom button to alert corrections officers (CO) about Williams' injuries. Upon arrival, the COs entered the pod, and one CO allegedly looked into Williams' cell and then "kept it moving" without tending to Williams' injuries. (Id. at ¶¶ 68, 81). About one hour later, another inmate walked by the cell, saw Williams, and called the COs. (Id. at ¶ 82).

The SAC alleges there were prior incidences or notices that the supervisory defendants had knowledge that Williams' health and safety were at risk within the corrections institution. Most notably, the SAC alleges that on or about ten separate times, Williams was noted to be a "confirmed gang member" by institution officials, and as such, his safety was at risk. (SAC ¶¶ 12,13, 14, 15, 16, 19, 20, 21, 32, 33, and 35).

In addition, the SAC alleges two other prior incidents giving corrections officials notice that Williams was a safety risk. In one prior confinement, Williams was not identified as a gang member by County officials, and when Williams was moved to a new cell, Williams was harassed by another inmate, causing Williams to lodge a complaint against the other inmate. (SAC ¶ 12-19).

During another period of incarceration, a CO, responding to a call by Williams, found him with lacerations on his face. Williams claims that he had fallen out of bed, but he later admitted that he had been in a fight. (Id. at ¶¶ 22, 27). As a result, Williams was charged with several violations of prison rules relating to the fight.

The SAC alleged that the "Somerset County jail had policies and practices" for video surveillance of the pods (SAC ¶ 129), and to provide the inmate with . . . medical attention. (SAC ¶ 130); however, supervisory employees "were deliberately indifferent to the obvious consequences . . . that directly caused constitutional harm to decedent." (SAC ¶ 137). Despite these allegations, there are no facts alleging that any of the supervisory defendants knew that Williams was in jail or involved in a fight.

II.

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court will accept well-pleaded

allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; see also *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000).

In reviewing a motion to dismiss, there is a three part test: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Within the SAC, there are a number of conclusory statements, which focus on the supervisory employees bringing this motion, and Somerset County. More specifically, they are:

> 118. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10 knew or should have known that Decedent was subjected to a malicious beating as made evident by reports of Decedent being heard hitting metal inside of his cell, asking for help, and gasping for air by fellow inmates.
>
> 119. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10 knew or should have known that Decedent required medical treatment when a correctional officer came to the pod directly after the fight to see what was happening.
>
> 120. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10 knew that Decedent required immediate medical treatment, and intentionally refused to provide it to him, as made evident by a correctional officer doing rounds and not taking action to check on Decedent's condition and seeking treatment for Decedent.
>
> 121. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional

Officers 1-10 delayed Decedent from receiving necessary medical treatment for non-medical reasons, as made evident by at least approximately one hour passing between the altercation and Decedent receiving medical treatment.

122. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10 prevented Decedent from receiving immediate and necessary medical treatment.

123. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10 acts and/or omissions in failing to give Decedent immediate and necessary medical treatment amounted to deliberate indifference.

124. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10 deliberate indifference in failing to provide Decedent with immediate and necessary medical treatment attributed and/or caused Decedent serious harm resulting in his death.

125. Plaintiff herein incorporates paragraphs 1 through 124 as though the same were set forth herein at length.

126. Somerset County Jail had policies and procedures in place to prevent altercations from occurring between inmates at the jail.

127. Somerset County Jail had policies and procedures in place to prevent inmates from entering other inmates cells.

128. Somerset County Jail had policies and procedures in place to conduct routine rounds of the pods to monitor the jail and assess the wellbeing of the inmates as they were incarcerated in the jail.

129. Somerset County Jail had policies and procedures in place to monitor electronic video surveillance of the pods contained within Somerset County Jail.

130. Somerset County Jail had policies and procedures in place to require inmates to receive prompt medical attention following a physical altercation with other inmates.

131. Following the Decedent's physical altercation in his cell in violation of the jail's policies and procedures, corrections officers came into the pod to determine what had occurred.

132. Corrections officers failed to adequately assess the decedent's medical condition in his cell despite a physical altercation occurring in direct violation of Somerset County Jail's policies and procedures as evidenced by the Decedent's prior occurrences and by the events that occurred during the interview of Kyser, i.e., him receiving medical attention after informing the corrections officers that he had been involved in an altercation with Decedent.

133. On at least one prior occasion Decedent had been involved in a physical altercation with another inmate and the corrections officers were not aware of the altercation until the Decedent informed them the next day.

134. Corrections officers failed to ensure Decedent received prompt medical attention after this prior physical altercation as they were not aware the altercation occurred.

135. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10 owed a duty to Decedent to adopt, implement and maintain policies, practices and customs to ensure that Somerset County Jail detainees' constitutional rights are protected.

136. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10 had the authority to institute policies and procedures for the Somerset County Jail and were the final policymakers for Somerset County Jail.

137. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10, with deliberate indifference to the obvious consequences, established and maintained policies, practices and/or customs that directly caused constitutional harm to Decedent.

138. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10 participated in violating Decedent's constitutional rights by directing their subordinates to violate Decedent's constitutional rights.

139. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10 participated in violating Decedent's constitutional rights due to their knowledge and acquiescence to their subordinates violations of Decedent's constitutional rights.

> 140. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10 deliberate indifference resulted in Decedent sustaining serious harm resulting in his death.
>
> 156. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10, owed a duty to protect Decedent, to provide him with immediate and necessary medical treatment for life threatening injuries, and to adequately implement and/or enforce policies and procedures for Somerset County Jail and to train employees with regard to the same.
>
> 157. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10's acts and/or omissions allowed inmate, James Kyser, to engage in a fight with Decedent in which no intervention took place.
>
> 158. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10's acts and/or omissions allowed Decedent to remain in his cell for approximately an hour following the altercation before medical treatment was received.
>
> 159. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10 acts and/or omissions allowed Decedent to sustain serious harm without receiving immediate and necessary medical treatment.
>
> 160. Decedent's death was attributable and/or caused by the aforesaid acts and/or omissions of Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10.

In addition, there are a number of other paragraphs which allege the supervisory employees "knew or should have known" of the incident causing Williams' death; but such an allegation is insufficient. Section 1983 liability cannot attach to a supervisor based on respondeat superior, but only on the supervisor's wrongful actions or omissions. Section 1983 Litigation, Federal Judicial Center (3d Ed. 2014), p. 115. *Ashcroft v. Iqbal*, 556 U.S. 667 (2009). For example, in Count 1, "§ 1983 – Failure to Protect," it alleges the supervisory employees "were deliberately indifferent to

7

the substantial risks posed to decedent." However, the SAC does not state any facts to impose individual liability of each supervisory employee. Another example is set forth within Count II – "§ 1983 – Failure to Provide Medical Care." Therein, the supervisory employees allegedly "knew or should have known – that decedent was subject to a malicious beating." Here, like the first example, there are no facts alleged to conclude that the supervisory employees knew anything about the beating.

"Government Officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondent superior." *Ashcroft v. Iqbal*, 556 U.S. 162, 676 (2009). A supervisory defendant may be liable if he, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm." *Barkes v. First Corr. Med., Inc.*, 766 F. 3d 307 (3d Cir. 2004); *rev'd on other grounds*, *Taylor v. Barkes*, 135 St. Ct. 2042 (2015). Within the SAC, Plaintiff alleges that the supervising employees "knew or should have known" about the incident causing Williams' death. These allegations are akin to respondeat superior liability. Presented below are such paragraphs:

> 164. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10 knew or should have known that the altercation with inmate, James Kyser, took place around 6:30, when inmates were served with dinner.
>
> 165. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10 knew or should have known that the altercation began in the common area of the pod and escalated up the stairs in front of the entire pod into Decedent's cell in violation of the policies and procedures of the Somerset County Jail.
>
> 166. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10 knew or should have known that an altercation took place between Decedent and inmate, James Kyser, when the entire pod observed and/or heard the altercation taking place.

> 167. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10 knew or should have known that Decedent was subjected to a malicious beating for approximately fifteen to twenty minutes in Decedent's own jail cell without any jail staff intervention.
>
> 168. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10 knew or should have known that Decedent required immediate and necessary medical attention when on at least two occasions, a correctional officer stopped by Decedent's cell following the altercation and did not take action to address Decedent's condition.

Moreover, there are two other paragraphs of the SAC that allege a "concerted agreement" giving rise to a conspiracy among the supervisory employees; but there are no facts to support same. The SAC does not allege when or how some agreement was reached. The paragraph states:

> 169. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10 had a concerted agreement to allow inmate, James Kyser. to maliciously beat Decedent, as made evident when inmate, Kyser, was ensured he would be released from jail on his court sanctioned date, and that Lieutenant Lorenzo Moye would shake Kyser's hand on his release.
>
> 170. Defendants, Charles O'Neill; Roger Delin; Gary Hoats; John Quinn; Frank J. Provenzano, Sr.; and John Doe Correctional Officers 1-10 made a concerted agreement to cover up the circumstances surrounding Decedent's death, as made evident by John Doe Inmate 1 being referred to as a "snitch" by correctional officers and being placed in protective custody following John Doe Inmate 1 giving a recorded statement.

In addition, there are other deficiencies in the SAC warranting dismissal of the allegations against the supervisory employees. For example, the SAC fails to allege whether Williams was a pretrial detainee or a prisoner – requiring different constitutional basis. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015). Plaintiff has also failed to specify the relief she is seeking against the supervisory employees. The ad damnum clause only requests relief against the

9

County of Somerset on counts IX-XIII. This alone is sufficient reasoning to dismiss the SAC. *See N. Y. Shipping Ass 'n, Inc. v. Waterfront Comm'n of N.Y. Harbor*, 2014 WL 4271630 at 12 (D.N.J. Aug. 27, 2014), *aff'd*, 835 F. 3d 344 (3d Cir. 2016); *RKO-Stanley Warner Theaters, Inc. v. Mellon Nat'l Bank & Tr. Co.*, 436 F.2d 1297 (3d Cir. 1970). Further, the caption fails to incorporate "John Doe 1-10" defendants despite reference to them in the body of the SAC. *See Edouard v. City of Long Branch*, 2018 WL 6326993 n.1 (D.N.J. Dec. 4, 2018). Fed. R. Civ. P. 10(a).

In changing course, the allegations against the County of Somerset are also conclusory. That is, the SAC alleges the County "failed to enforce the policies, procedures and the customs of the Somerest County Jail regarding identifying an inmate's risk factors," (¶ 214); identifying pod units that provide safety (¶ 215), safely surveilling inmates (¶ 216), monitoring verbal altercations (¶ 217), intervening in physical altercations (¶ 218), conducting routine inmate checks (¶ 219) among others. There are no underlying facts to support that a policy or practice was not maintained. Moreover, "when claims are asserted against both the municipal entity and the municipal official in his official capacity, federal courts consistently dismiss the official capacity claim as "redundant" to the municipal entity claim" § 1983 litigation, Federal Judicial Center (3d Ed. 2014), p. 89. This is another issue that warrants dismissal.[1]

Plaintiff may amend within thirty days.

## ORDER

This matter comes before the Court on two motions to dismiss filed by Defendants Roger Delin, Charles O'Neill, Frank Provenzano, John Quinn, The Estate of Chief Gary Hoats, and the County of Somerset. (ECF Nos. 37, 38). The Court has considered the written submissions of the

---

[1] Since all federal claims are dismissed, the state law claims are also dismissed for lack of jurisdiction.

parties and the arguments set forth on the record on February 21, 2019. Accordingly, for the reasons stated herein and for good cause shown;

**IT IS** on this __19__ day of June, 2019;

**ORDERED** that the Individual Defendants' motion to dismiss (ECF No. 37) is granted; and it is further

**ORDERED** that Defendant County of Somerset's motion to dismiss (ECF No. 38) is granted; and it is further

**ORDERED** that Plaintiff has thirty days from the date of this order to file an amended complaint.

_____
PETER G. SHERIDAN, U.S.D.J.