# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

PATRICIA BELIN,

    *Plaintiff,*

v.

CHARLES O'NEILL, *et al.*,

    *Defendants.*

Civil Action No.: 17-cv-13207 (PGS)(LHG)

**MEMORANDUM AND ORDER**

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Defendant County of Somerset's ("Defendant") motion to dismiss the Third Amended Complaint. (ECF No. 49). This case emanates from the death of prisoner Jaquan Williams ("Williams"), who was incarcerated at Somerset County Jail, after a physical altercation with another inmate in his jail cell. Plaintiff Patricia Belin ("Plaintiff") is the administratrix of Williams' estate. The Third Amended Complaint sets forth five causes of action: (1) failure to train (Count I); (2) failure to enforce policies and procedures (Count II); (3) wrongful death (Counts III); (4) violations of civil rights as protected under the New Jersey Constitution (Counts IV); and (5) negligence (Count V). (ECF No. 46). The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## BACKGROUND

Williams was a known gang member and had a litany of arrests and detentions. (*See* Third Amended Complaint ("TAC") ¶¶ 6-30). On January 2, 2017, Williams was detained at the Somerset County Jail in connection with his failure to pay child support. (*Id.* ¶ 5). On January 11, 2017 at approximately 6:30 p.m., Williams challenged fellow inmate, James Kyser, to a

fight, which took place in Williams' cell. (*Id.* ¶¶ 36, 50, 70). Two unidentified inmates witnessed the fight. One witness "observed Kyser throwing [Williams] around in his cell, and could hear the thud . . . of Williams' body hitting metal inside the cell." (*Id.* ¶ 75). The altercation in Williams' cell lasted approximately fifteen to twenty minutes. (*Id.* ¶ 73). "Directly after the fight," two Corrections Officers ("CO") separately came into Williams' housing unit, or "pod," and checked on Williams, but did not notice anything wrong with him at those times. (*Id.* ¶ 66). Shortly thereafter, an unidentified inmate called into the control center via intercom indicating that "something was wrong" with Williams. (*Id.* ¶ 37). At 7:06 p.m., or approximately sixteen to twenty-one minutes after the altercation, a CO responded to Williams' cell and called a "Code White" due to Williams' shallow breathing and slow facial movements. (*Id.* ¶ 38, Ex. A). Williams was then transported to Robert Woods University Hospital. He arrived at the hospital at 7:23 p.m. (*Id.* ¶ 40) and was pronounced dead at 9:45 p.m. (*Id.* ¶ 46).

Plaintiff interposes her claims against the municipal Defendant, only.[1] The TAC cites and incorporates by reference several "jail directives," or policies in which Defendant's employees were purportedly obligated to follow. (*Id.* ¶¶ 82-99; Ex. B-G). These jail directives concern: (i) the job description, duties, and responsibilities of Classification Supervisors, Control Center 2 Operators, CC Operators, Roving Officers; as well as (ii) guidelines and procedures for inmate classification. (*Id.*). In addition, Plaintiff cites provisions of N.J.A.C. § 10A:31, which, *inter alia*, governs the standards of care owed to prison inmates under New Jersey law. (*See id.* ¶¶ 100-103). In particular, Plaintiff references N.J.A.C. § 10A:31-14.2(a), which provides: "Inmates shall be protected by adult county correctional facility staff from personal abuse,

---

[1] In her two previous iterations of the complaint, which were both dismissed without prejudice, Plaintiff also included claims as asserted against various individual state actors.

corporal punishment, personal injury, disease, property damage, and harassment." Plaintiff also points to N.J.A.C. § 10A:31.12(b), which states: "The [prison] medical staff shall assess the medical complaints of inmates and provide for the treatment of inmates according to priorities of need."

In Count I, Plaintiff contends that the series of events transpiring on January 11, 2017 demonstrate Defendant's failure to train COs in accordance with said jail directives and as prescribed under the above-referenced provisions of N.J.A.C. § 10A:31. (*Id.* ¶¶ 105-121). Similarly, in Count II, Plaintiff alleges that Defendant failed to enforce same. (*Id.* ¶¶ 123-142).

## LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the Third Amended Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person

will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2001). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, *Fed. Practice & Procedure: Civil* 2d § 1357, at 340 (2d ed. 1990)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact), . . . ." *Id.*

## ANALYSIS

### i. FAILURE TO TRAIN AND ENFORCE POLICIES AND PROCEDURES (COUNTS I, II)

In Counts I and II, Plaintiff alleges that Defendant County of Somerset failed to properly train and enforce certain "policies, practices and customs necessary to protect Somerset County Jail detainees' [*i.e.*, Williams'] constitutional rights." (*See* TCAC ¶ 105, 143). Plaintiff brings Counts I and II under 42 U.S.C. § 1983.

"Title 42 U.S.C. § 1983 provides a cause of action against 'every person who, under color of any statute of any State subjects or causes to be subjected, any citizen to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id.*

4

It is well established that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978). In other words, "a local government cannot be held liable under § 1983 under a theory of *respondeat superior*." *Hammon v. Kennett Twp.*, 746 F. App'x 146, 149 (3d Cir. 2018). Rather, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that [some] 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (citation omitted). However, "[i]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Vulcan Pioneers of New Jersey v. City of Newark*, No. CIV. A. 02-5802 SDW, 2008 WL 4224941, at *4 (D.N.J. Sept. 10, 2008), *aff'd*, 374 F. App'x 313 (3d Cir. 2010) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997)). District courts are required to apply these "rigorous requirements of culpability and causation" stringently. *Id.*; *see also Connick*, 563 U.S. at 61-62.

In order to state a claim for failure to train under *Monell* and its progeny (Count I), Plaintiff must demonstrate that the "municipality's failure to train its employees in a relevant respect . . . amount[s] to [a] 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick*, 563 U.S. at 61 (citation omitted). Decisional case law provides that Plaintiff may successfully plead Defendant's "deliberate indifference" by identifying *specific* training deficiencies and either (1) a pattern of constitutional violations of which policy-making officials can be charged with knowledge, or (2) that training is obviously necessary to

5

avoid constitutional violations. *See, e.g., City of Canton, Ohio v. Harris*, 489 U.S. 378, 396-97 (1989); *Gaymon v. Esposito*, No. CIV.A. 11-4170 JLL, 2012 WL 1068750, at *7 (D.N.J. Mar. 29, 2012). Moreover, Plaintiff must also demonstrate that the identified deficiencies were the actual cause of Williams' constitutional injuries. *Id.* at 391-392. In other words, Plaintiff cannot prevail merely by alleging that COs were inadequately trained, or that there was some negligent administration of an otherwise adequate program, or that the conduct resulting in the injury could have been avoided by better training. *See id.* (federal courts are "ill suited to undertake" "in an endless exercise of second-guessing municipal employee-training programs"). Rather, in order to state a claim, Plaintiff must point to a particular training deficiency in a municipal policy that actually caused a deprivation of Williams' constitutional rights. The TAC falls short in plausibly pleading these standards of liability. *Vulcan*, 2008 WL 4224941, at *4.

Here, in applying the well-engrained precepts above, Plaintiff does not plausibly allege that Defendant County of Somerset acted with "deliberate indifference" to Williams' constitutional rights by either alleging (1) a pattern of constitutional violations of which policy-making officials can be charged with knowledge, or (2) that training was so obviously necessary to avoid constitutional violations as to put policy-making officials on notice of same. *Gaymon*, 2013 WL 4446973, at *8. <u>First</u>, perhaps seeking to show a pattern of constitutional violations, Plaintiff alleges that during a prior detainment, on April 10, 2014, COs moved Williams to a different housing pod in order to avoid an altercation with a fellow inmate (TAC ¶ 13); and (2) amid another prior detainment, on September 28, 2015, Williams was moved to a different housing pod upon his request after an altercation with another inmate (TAC ¶¶ 17-24). Plaintiff fails, however, to describe how these incidents violated Williams' constitutional rights, let alone plausibly demonstrate how these incidents constitute a pattern of such violations of which policy-making

6

officials may be ascribed with knowledge. Plaintiff also fails to explain how these prior "incidents" relate to the January 11, 2017 fight with inmate Kyser, particularly in view of the fact that Plaintiff does not plead in her complaint that Williams requested to be moved from his cell or complained about his safety prior to the fight. Second, Plaintiff similarly fails to demonstrate "single-incident" liability for circumstances in which "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [County of Somerset] can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 396 (citation omitted). Plaintiff includes no factual allegations in her TAC regarding the "nature of the deficiencies of the training . . . for example in light of comparators such as training given by other municipalities or counties . . . in [relevant] areas. Given that a municipality's culpability for a deprivation of rights 'is at its most tenuous where a claim turns on a failure to train,' this Court finds that, given the limited factual support for [Plaintiff's] failure to train claim, it cannot survive a [12(b)(6) motion]." *Gaymon*, 2013 WL 4446973, at *15.

In addition to Plaintiff's failure to meet the § 1983 pleading requirements discussed above, the TAC fails to satisfy Fed. R. Civ. P. 8. As alluded, Plaintiff does not set forth a clear and plain statement plausibly alleging how any of Defendant's jail directives were deficient, nor does she describe how or why these deficiencies in said jail directives actually caused Williams' constitutional injuries. *Canton*, 489 U.S. at 391-392; *see also Gaymon*, 2013 WL 4446973, at *15 (the "[f]irst and foremost" reason for dismissal: "Plaintiffs cite to no facts detailing specific deficiencies in training programs . . . ."); *Lapella v. City of Atl. City*, No. CIV. 10-2454 JBS/JS, 2012 WL 2952411, at *8 (D.N.J. July 18, 2012) (dismissing where "Plaintiff's complaint fails to allege any specific shortcoming in Atlantic City's training programs . . . ."). Instead, Plaintiff

merely cites to the jail directives and alleges that had the COs been trained pursuant to same, *perhaps* Williams would not have been able to start the fight and *perhaps* his injuries would have been detected and treated sooner. (*See* TAC ¶¶ 104-121). Plaintiff's conclusory and speculative allegations lack any link to a deficiency in the jail directives or training protocol. *See, e.g., Canton*, 489 U.S. at 391-392; *Khalil v. City of Paterson*, No. CV 18-3241 (JLL), 2018 WL 6168191, at *7 (D.N.J. Nov. 26, 2018) (quoting *Canton*, 489 U.S. at 392). Without more facts, Plaintiff fails to state a claim for failure to train. *Id.*

Plaintiff's opposition brief only exacerbates her pleading deficiencies. Plaintiff argues that she "adequately plead . . . policies and procedures that the jail had in effect, which were clearly violated," presumably by the COs referenced in the TAC. (Opp. Br. at 15, ECF No. 53). Accordingly, Plaintiff seems to shift the blame from the municipal defendant back to the individuals previously dismissed from this action. Plaintiff's argument, however, ignores the holding in *Monell* that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. And, for all of these reasons, Defendant's motion to dismiss Count I is granted.

Plaintiff's second theory of municipal liability is an alleged failure to act affirmatively—that is, Defendant's failure to enforce policies and procedures (Count II). "[W]hen the theory of municipal liability rests on an alleged failure to act affirmatively, plaintiff must also prove deliberate indifference by the policymakers of the municipality, under the [same] principles [set forth above] established by the Supreme Court in [*Canton*]." *Thompson v. City of Newark Police Dep't*, No. CIV A 06-2028(SRC), 2009 WL 791314, at *7 (D.N.J. Mar. 20, 2009). As the Court has already established, here, Plaintiff fails to plead that Defendant acted with deliberate indifference to Williams' constitutional rights by plausibly asserting either a pattern of

8

constitutional violations or by showing that "the need to take some action to control the agents of the [Defendant] [was] so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the [Defendant-policy makers] can reasonably be said to have been deliberately indifferent to the need." *Id.* (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003)). Moreover, Plaintiff's Count II is no less unsupported by facts, conclusory, and speculative than Count I. Accordingly, Plaintiff's failure to enforce policies and procedures claim (Count II) must also be dismissed.

Finally, despite repeated contentions in her opposition brief, Plaintiff cannot avoid dismissal of her claims merely because the parties have not yet engaged in discovery. (*See* Opp. Br. at 11, 13, 15, 16, 18). Indeed, courts in this district routinely dismiss *Monell* claims on 12(b)(6) motions where, as here, the plaintiff fails to set forth a plausible claim for relief under *Canton*, *Connick*, and their progeny. *See, e.g., Khalil*, 2018 WL 6168191, at *7; *Zampetis v. City of Atl. City*, No. CV 15-1231 (NLH), 2016 WL 5417195, at *6 (D.N.J. Sept. 28, 2016); *Gaymon*, 2013 WL 4446973, at *13-19; *Grandizio v. Smith*, No. CIV. 14-3868 RBK/KMW, 2015 WL 58403, at *6-7 (D.N.J. Jan. 5, 2015); *Moriarty v. DiBuonaventura*, No. 14-CV-2492 JBS/AMD, 2014 WL 3778728, at *10 (D.N.J. July 31, 2014). Moreover, it is well-established that "[d]iscovery . . . cannot serve as a fishing expedition through which plaintiff searches for evidence to support facts [she] has not yet pleaded." *Giovanelli v. D. Simmons Gen. Contracting*, No. CIV.A 091082NLHAMD, 2010 WL 988544, at *5 (D.N.J. Mar. 15, 2010); *Ogbin v. Citifinancial Mortg. Co.*, No. CIV. 09-0023NLH, 2009 WL 4250036, at *2 (D.N.J. Nov. 19, 2009) (same).

    ii.    <u>STATE LAW CLAIMS</u> (COUNTS III-V)

Plaintiff also pleads additional state law claims. Since there are no other federal claims, the Court, in its discretion, declines to exercise supplemental jurisdiction over the remaining state

law claims. 28 U.S.C. § 1367(c)(3); *Stone v. Martin*, 720 F. App'x 132, 136 (3d Cir. 2017). As such, Counts III-V are dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (ECF No. 49) is GRANTED and the TAC is dismissed. Since Plaintiff has amended her complaint twice before, the Court finds further amendment to be futile. Thus, dismissal is with prejudice.

## ORDER

This matter comes before the Court on Defendant's motion to dismiss (ECF No. 49). Having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all of the foregoing reasons;

IT IS on this 3 day of Dec , 2019;

**ORDERED** that Defendant's motion to dismiss the Third Amended Complaint (ECF No. 49) is **GRANTED** with prejudice; and is further

**ORDERED** that the Clerk of Court is directed to close this case.

*[signature]*
PETER G. SHERIDAN, U.S.D.J.